# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-10-00105-CV
---

**Roark Amusement & Vending, L.P., Appellant**

**v.**

**Susan Combs, Comptroller of Public Accounts of the State of Texas,
and Greg Abbott, Attorney General of the State of Texas, Appellees**

---
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. D-1-GN-06-004725, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**
---

## M E M O R A N D U M   O P I N I O N

Appellant Roark Amusement & Vending, L.P. ("Roark") filed suit against appellees Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas (collectively, "the State"), seeking a refund of sales tax assessed on its purchase of the "plush toys" used to stock its coin-operated amusement crane machines. The parties filed cross-motions for summary judgment; the trial court granted the State's motion and denied Roark's, determining that Roark was not entitled to the claimed sale-for-resale exemption. *See* Tex. Tax Code Ann. § 151.006(a)(3) (West 2008). On appeal, Roark argues that it is entitled to the exemption because the record conclusively establishes that it purchased the plush toys for the purpose of permanently transferring them to its customers as an integral part of its taxable amusement services. *See id.* We will reverse the trial court's grant of summary judgment

in favor of the State, render judgment that Roark is entitled to the exemption, and remand the cause to the trial court for a determination of the amount of the refund to which Roark is entitled.

### FACTUAL AND PROCEDURAL BACKGROUND

According to the stipulated facts, Roark owned and leased coin-operated amusement crane machines, which it placed at various grocery stores, restaurants, and shopping malls in Texas and other states. Roark held a license issued by the Comptroller's office for amusement machines. It paid Texas sales tax on its lease payments for the machines and an annual occupation tax for each machine it owned in Texas.[1]

Each amusement crane machine consists of a glass cabinet situated on top of a metal bin that holds the plush toys. Within the glass cabinet is a mechanical crane arm fitted with a claw at one end. A handle on the outside of the machine controls the crane arm and claw; the handle operates as a joystick to control the movement of the crane arm. Patrons gain operational control of the crane arm and claw for a short period of time by inserting coins, typically one or two quarters, into the machine. Pressing a button on one end of the handle causes the mechanical arm and claw to lower.

Once the claw drops, moving the handle causes the claw to close and lift, raising any plush toy that it may have grasped. The arm then positions the claw over a chute, which leads to a

---

[1] In a publication explaining the classifications of sales and use tax exemptions, the Comptroller notes that coin-operated amusement- and personal-services machines were exempted from sales tax in 1984 and are instead taxed "under a separate tax levied on a per machine basis." *See* Texas Comptroller of Public Accounts, "Limited Sales and Use Tax," *available at* http://window.state.tx.us/taxinfo/incidence/limit.html (accessed Dec. 15, 2010).

tray. If the claw has successfully grabbed and held a toy, the claw releases the toy through the chute and onto the tray, where it can be retrieved by the customer. It is undisputed that if the claw is positioned correctly, it will retrieve a toy, over which the patron gains permanent physical possession.

On the basis of these stipulated facts, Roark sought a refund of the sales tax it paid on the plush toys used to stock the machines, arguing that the toys are subject to the sale-for-resale exemption because they are transferred as an integral part of Roark's taxable amusement services. *See* Tex. Tax Code Ann. § 151.006(a)(3) (defining "sale for resale" to include sale of "tangible personal property to a purchaser who acquires the property for the purpose of transferring it . . . as an integral part of a taxable service"); *id.* § 151.0101(a)(1) (including "amusement services" within definition of "taxable services"). The State countered that the integral-transfer exemption does not apply, arguing that Roark's services are not "taxable" for purposes of the sale-for-resale exemption because the tax code specifically exempts coin-operated amusement services from sales and use tax. *See id.* § 151.335 ("Amusement and personal services provided through coin-operated machines that are operated by the consumer are exempt from the taxes imposed by this chapter."). Thus, in the State's view, Roark is the ultimate consumer of any tangible personal property—including the plush toys—used to perform its non-taxable amusement services. The parties urged their respective positions on cross-motions for summary judgment; the trial court granted the State's motion and denied Roark's. This appeal followed.

# STANDARDS OF REVIEW

To be entitled to summary judgment, the movant must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). In our de novo review of a summary judgment, we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). When, as here, both parties move for summary judgment on overlapping issues and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004).

To the extent that the issues in this appeal turn on matters of statutory construction, we review those questions de novo. *See Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002). Our primary concern in construing statutes is to give effect to the legislature's intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In so doing, we use definitions prescribed by the legislature and consider any technical or particular meaning that the words have acquired. Tex. Gov't Code Ann. § 311.011(b) (West 2005). Otherwise, we construe the statute's words according to their plain and common meaning, *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004), unless a contrary intention is apparent from the context, *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 189 (Tex. 1981), or unless such a construction would lead to absurd results, *University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004). We construe administrative rules, which have the same force and effect as statutes,

in the same manner as statutes. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). Unless the rule is ambiguous, we follow its clear language. *Id.* So long as the administrative interpretation is not plainly erroneous or inconsistent with the regulation, we defer to an agency's interpretation of its own rule when there is vagueness, ambiguity, or room for policy determinations in the regulation. *See id.* at 254-55; *Gates v. Texas Dep't of Family & Protective Servs.*, 252 S.W.3d 90, 98 (Tex. App.—Austin 2008, no pet.).

## DISCUSSION

As the plaintiff in a tax-refund case, Roark had the burden of proving, by a preponderance of the evidence, that it is entitled to a refund of the sales tax it paid on its purchase of plush toys used to stock its amusement crane machines. *See North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *GATX Terminals Corp. v. Rylander*, 78 S.W.3d 630, 634 (Tex. App.—Austin 2002, no pet.). On appeal, Roark argues that it is entitled to a refund because the toys are transferred to the customer as an integral part of the amusement service it provides—a service that it says is "taxable" under section 151.0101 even though its coin-operated nature subjects it to an exemption under section 151.335.[2] Being "taxable-exempt," Roark maintains, is not the same thing as being "non-taxable."

In so arguing, Roark analogizes to other scenarios in which courts have recognized that, for purposes of construing the sale-for-resale exemption, it is sufficient that the service

---

[2] *See also* 34 Tex. Admin. Code § 3.298(g)(4) (2008) (Tex. Comptroller of Pub. Accounts, Amusement Services) (amusement services provided through coin-operated machines that consumer operates are exempt from sales tax).

is classified as *taxable*, irrespective of whether it is *actually taxed*. For example, in *Day & Zimmerman, Inc. v. Calvert*, the Texas Supreme Court held that the sale-for-resale exemption applied to the transfer of items from a defense contractor to the federal government, even though the ultimate resale could never in fact be taxed in light of the tax code exemption for governmental entities. 519 S.W.2d 106, 110-11 (Tex. 1975); *see also Strayhorn v. Raytheon E-Systems*, 101 S.W.3d 558, 570 (Tex. App.—Austin 2003, pet. denied) (applying *Day & Zimmerman* analysis to exemption claimed under tax code section 151.309 for items sold to governmental entities). In both of these cases, the sale-for-resale exemption was held to apply despite the applicability of an additional exemption ensuring that the resold items were not taxed in fact. Consistent with these precedents, this Court recently held in *7-Eleven, Inc. v. Combs* that application of the sale-for-resale exemption does not turn on whether the taxpayer can show that the subject items are actually resold and taxed in Texas. 311 S.W.3d 676, 690 (Tex. App.—Austin 2010, pet. denied) ("The sale-for-resale statute simply requires that the service to which the transfer of tangible personal property is integral be a *taxable* service—not that it actually *be taxed* in the particular instance in question.").

Roark's view also finds support in the text and overall statutory scheme of the tax code. Subchapter A of chapter 151 of the code, which governs sales and use tax, presents "taxability" as a threshold question: an item is either taxable because it is tangible personal property or a taxable service, or it is not taxable. *See* Tex. Tax Code Ann. § 151.010 ("'Taxable item' means tangible personal property and taxable services."). As discussed above, "'[t]axable services' means,"

6

among other specifically enumerated services, "amusement services." *Id.* § 151.0101(a)(1).[3] It is in this section of the code that we would expect the legislature to exclude from taxability any services that it did not intend to be categorized as "taxable," as, for example, it has done in carving out the repair and restoration of certain vehicles and computer programs from the otherwise-taxable repair and restoration services listed therein. *See id.* § 151.0101(a)(5) (defining repair, remodeling, maintenance, and restoration services as taxable except those performed on aircraft, certain watercraft, motor vehicles, and computer programs).

Once an item is determined to be taxable under subchapter A, the next question is whether it is subject to an exemption under subchapter H. *See id.* §§ 151.301-.355. The initial provision of subchapter H states that "[i]f a *taxable item* is exempted from the taxes imposed by this chapter, the sale, storage, use or other consumption of the item is not subject to the sales tax imposed by Section 151.051 of this code or the use tax imposed by Section 151.101 of this code." *Id.* § 151.301 (emphasis added). Thus, as the plain language of section 151.301 demonstrates, the applicability of an exemption does not transform the character of an item from taxable to nontaxable; rather, it remains a *taxable item*, but is one that is subject to an exemption. Here, subchapter H provides exemptions for amusement services that are provided through coin-operated machines, *see id.* § 151.335, as well as those provided by certain nonprofit organizations, educational institutions,

---

[3] *See also id.* § 3.298(a)(1)(E)(iv) (including "games of skill" within definition of "amusement services"). Based on the stipulated facts attached to the parties' summary judgment motions, which state that a patron's success in securing a plush toy depends on whether he correctly positions the mechanical arm and claw, Roark characterizes its amusement crane machines as games of skill.

and governmental entities and political subdivisions of the State, *see id.* § 151.3101(a). Nothing in the statute indicates, however, that such amusement services cease to be "taxable services."

The distinction between nontaxable sales and taxable sales that are subject to an exemption has been recognized in a number of other important contexts. With respect to burdens of proof in tax cases, for example, Texas courts have long held that

> where a question of exemption from taxation is involved, the statute must be construed liberally in favor of the taxing authority, and strictly against the one claiming the exemption. To the contrary, where the question involved is whether the person on whom the tax is sought to be imposed comes within the statutory provision imposing the tax, the statute must be construed strictly against the taxing authority and liberally in favor of the person sought to be held.

*Texas Unemployment Comp. Comm'n v. Bass*, 151 S.W.2d 567, 570 (Tex. 1941); *see also Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 785-86 (Tex. App.—Austin 2004) (holding same), *aff'd*, 209 S.W.3d 83 (Tex. 2006). Similarly, the Comptroller has consistently emphasized that "an exemption carves out an otherwise taxable item, whereas an exclusion is an item that is simply not taxed by the code." Comptroller Hearing No. 30,287 (1993); *see also* Comptroller Hearing No. 44,389 (2001) ("Claimant's argument that the services purchased from [seller] are *non-taxable* suggests that it is claiming an *exclusion* from tax, but that is a mischaracterization. Claimant's argument is an *exemption* claim pursuant to [subchapter H of the tax code]." (emphases added)). Because we must read the statute as a whole and give effect to every part, *see City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003), we cannot adopt an interpretation that improperly conflates these two concepts when the legislature has clearly indicated that they are distinct.

Based on the foregoing, we hold that the amusement services Roark provides are "taxable services" for purposes of the sale-for-resale statute. Accordingly, the State was not entitled to summary judgment on the ground that section 151.335 of the tax code renders Roark's services "nontaxable" as a matter of law.[4]

To be entitled to summary judgment itself, however, Roark was required to prove conclusively that it acquired the plush toys for the purpose of transferring them as an integral part of its amusement services. *See* Tex. Tax Code Ann. § 151.006(a)(3). On appeal, the State does not dispute that the plush toys are integral to the performance of Roark's amusement services, agreeing that the plush toys serve as the incentive to play the game.[5] Instead, the State argues that Roark failed to show that the plush toys were "resold" by demonstrating that care, custody, and control of the items was transferred to the purchasers of the amusement service, particularly to those who were unsuccessful at retrieving a toy. *See id.* § 151.302(b) ("Tangible personal property used to perform a taxable service is not considered resold unless the care, custody, and control of the tangible personal property is transferred to the purchaser of the service.").

---

[4] We note that our interpretation of "taxable services" here is consistent with the object and purpose of the sale-for-resale exemption, which is designed to prevent double taxation. *See Sharp v. Clearview Cable TV, Inc.*, 960 S.W.2d 424, 426 (Tex. App.—Austin 1998, pet. denied). The parties acknowledge that the coin-operated nature of the amusement services does not permit them to escape taxation, because they are in fact taxed under the occupations code and, as the Comptroller has explained, "impracticality" in collecting a tax is a recognized basis for a tax exemption, *see* "Limited Sales and Use Tax," *supra* note 1. A coin-operated service where no human attendant is present to collect tax or provide change arguably poses such an impractical circumstance.

[5] We likewise conclude that the transfer of plush toys is integral to the amusement service. *See 7-Eleven, Inc. v. Combs*, 311 S.W.3d 676, 687 (Tex. App.—Austin 2010, pet. denied) (construing "integral" to mean "important to the performance" of taxable service).

9

In response, Roark points to the parties' stipulations that a patron gains operational control over the mechanical arm and claw by inserting coins into the machine; that if the claw is positioned correctly, it retrieves a plush toy; and that when a patron successfully obtains a plush toy, he gains permanent physical possession of it. The summary-judgment record also contains an affidavit from Roark's president, who averred that "Roark transferred all of the toys it purchased to its customers, except for toys lost, stolen, or damaged." Thus, the evidence establishes that care, custody, and control of every plush toy is eventually transferred to Roark's customers in satisfaction of section 151.302(b), even if every customer does not necessarily obtain a toy every time he plays the game. Based on the record in this case, we agree with Roark that the care, custody, and control element is satisfied here.[6] We therefore sustain Roark's issue on appeal.

## CONCLUSION

Because Roark was entitled to the sale-for-resale exemption for the plush toys that it transferred as an integral part of its amusement services, we reverse the trial court's summary judgment in favor of the State and render judgment that Roark is entitled to the sale-for-resale

---

[6] The State further argues that the Comptroller has by rule determined that a game operator such as Roark is the "consumer of the items it purchases to provide its services that are not taxable." *See* 34 Tex. Admin. Code § 3.301(b)(2) (2008) (Tex. Comptroller of Pub. Accounts; Promotional Plans, Coupons, Retailer Reimbursement) (providing that operators of games in which each participant does not receive some merchandise or prize become consumers of merchandise so used and are liable for tax assessed thereon). Having determined that the amusement services in question are taxable services, however, we do not defer to the Comptroller's interpretation of this rule, as it conflicts with our interpretation of an unambiguous provision of the tax code. *See Public Util. Comm'n v. Gulf States Util. Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *Vista Healthcare, Inc. v. Texas Mut. Ins. Co.*, 324 S.W.3d 264, 272 (Tex. App.—Austin 2010, no pet.).

exemption under these circumstances. We remand the cause to the trial court for further proceedings to determine the amount of refund to which Roark is entitled.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Reversed and Rendered in part; Reversed and Remanded in part

Filed:   January 26, 2011